UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ASOMA CORPORATION,

                Plaintiff,

   -v-                                                No. 01 Civ. 3853 (LTS)(THK)

M/V FAROS, HER ENGINES, BOILERS, TACKLE, ETC.,
SK SHIPPING CO. LTD.,
COLUMBIA SHIPMANAGEMENT LTD.,
PELAGOS SHIPPING, LTD.,

                Defendants.
_____

MEMORANDUM OPINION AND ORDER

       In this admiralty action, Plaintiff Asoma Corporation ("Plaintiff" or "Asoma") seeks to recover damages from defendants M/V Faros, Her Engines, Boilers, Tackle, Etc., SK Shipping Company Ltd. ("SK Shipping"), Columbia Shipmanagement Ltd. ("Columbia"), and Pelagos Shipping, Ltd. ("Pelagos"), for damage to a cargo of steel coils. The Court dismissed Plaintiff's original complaint in 2001, on the ground that the bills of lading upon which Plaintiff had sued included a clause mandating that any action on those bills of lading be brought in South Korea. Plaintiff appealed, and the United States Court of Appeals for the Second Circuit held that the Court had erred in denying Plaintiff leave to amend its complaint to assert that the carriage of the goods in question had been governed by a voyage charter party that included a provision for the pursuit of cargo damage claims in the Southern District of New York, rather than by the bills of lading. Following remand, Plaintiff amended its Complaint, omitting all references to the bills of

lading and asserting its claims under a December 23, 1999, voyage charter party between Defendant SK Shipping and "Metall und Rohstoff Shipping London Ltd. or nominee." Defendants SK Shipping, Columbia, and Pelagos now move to dismiss the Amended Complaint, renewing their arguments that Plaintiff's claims must be brought, if at all, in South Korea because the bills of lading, rather than the voyage charter party, govern the conditions of carriage of the cargo in question and designate the Seoul District Court as the exclusive forum for the claims brought here. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1333.

The Court has considered thoroughly the parties' submissions in connection with the motions to dismiss the Complaint. For the reasons that follow, Defendants' motions to dismiss the Amended Complaint are granted.

## BACKGROUND

The following summary of material facts is drawn from Plaintiff's allegations in its Amended Complaint and the parties' undisputed factual proffers in connection with the instant motions. On or about September 22, 1999, Plaintiff's affiliate Macsteel International Far East Limited ("Macsteel") entered into a contract with Yieh Loong Enterprise Co., Ltd. ("YL"), a Taiwanese steel manufacturing company, for the purchase of certain rolled steel sheets in coil ("steel coils"). The price term was FOB Kaohsiung, Taiwan, and the steel was to be shipped to the United States. (Macsteel/YL Sales Contract, Ex. A to Decl. of William Matteo in Opp'n. to Mot. to Dismiss). On or about December 23, 1999, another of Plaintiff's affiliates, Metall und Rohstoff Shipping London, Ltd. ("MUR") entered into a voyage charter party with Defendant SK Shipping for carriage of a cargo of steel coils from Kaohsiung to ports in the United States on a ship to be nominated. The voyage charter party document identified the "Charterers" as MUR "or nominee."

(Voyage Charter, Ex. C to Matteo Decl.)  The voyage charter party includes a "Clause Paramount" providing, among other things, that "[a]ny arbitration clause in this contract shall not apply for cargo loss or damage but such claims shall be brought in the United States District Court for the Southern District of New York, to which jurisdiction owners hereby consent."  (Id. at Clause 35.)  The document defines "owners" as "SK Shipping., Co., Ltd. Seoul, Korea as time chartered onwers."  (Id. at Part 1., box 3.)  Plaintiff Asoma asserts that MUR entered into the voyage charter, which makes no reference to Plaintiff, "on behalf of Asoma as nominee."  (Am. Compl. ¶ 9.)  In connection with the instant motion practice, Plaintiff also asserts that MUR "entered into [the] voyage charter party on Asoma's behalf" and that "Asoma intended that the terms and conditions of the charter party . . . would govern its rights and obligations with the ocean carrier" (Matteo Decl. ¶ 4), and further argues in its brief that MUR was acting as Asoma's agent at the time the charter party was made (Mem. in Opp'n. at 17).  Plaintiff also proffers the affidavit of an MUR official asserting:

> The purpose of this fixture . . . was to provide ocean transportation for steel products purchased by Asoma from Kaohsiung, Taiwan, to ports in the U.S. MuR[sic] entered into the December 23, 1999, charter party with SK on behalf of Asoma, as nominee, with the arrangement that Asoma would pay the freight charges due under the charter party directly to SK.

(Decl. of Nicholas Cowles at ¶ 2, Ex. O to Decl. of Steven P. Calkins in Opp'n to Mot. to Dismiss.)  Although Plaintiff argues that a prior transaction put SK Shipping on notice that MUR merely acted as a representative of its affiliates in these sorts of transactions (Matteo Decl. ¶ 13), SK Shipping disputes Asoma's allegations as to the particulars of the prior transaction and denies that it was aware when entering into the voyage charter that MUR "was only acting as a booking and chartering representative for Asoma Corporation."  (Decl. of Richard Lee ¶ 7, Ex. 6 to Not. of

Mot.)

On or about January 6, 2000, SK Shipping, which was disponent owner of the M/V Faros pursuant to a time charter,[1] nominated the Faros to serve as the vessel under the MUR/SK Shipping voyage charter party. MUR's United States affiliate referred SK's inquiry to Macsteel; a day later, MUR conveyed to SK Shipping a message from Macsteel indicating that the nomination was acceptable to YL (the steel manufacturer). MUR appended a note identifying YL as the "mill/shippers." (Ex. G to Matteo Decl.)

On or about January 11, 2000, Asoma entered into a contract with Macsteel for the purchase of the YL steel, which provided for payment to Macsteel "upon presentation of shipping documents" consisting of, inter alia, "Full Set 3/3 Clean On Board Bills of Lading." (Ex. B to Matteo Decl.) SK Shipping issued bills of lading, dated January 25, 2000, to YL, which is designated as the Shipper in the documents, for the steel coils. The bills of lading identify the Consignee as "To Order," thus rendering them negotiable. (Bills of Lading, Ex. 5 to Not. of Mot.) The bills of lading, which do not mention Asoma, MUR or Macsteel, include a printed provision that "[a]ny claim, dispute, suit or action concerning goods carried under this Bill of Lading, whether based upon breach of contract, tort or otherwise shall be brought before the Seoul District Court in Korea." (Ex. 6 to Not. of Mot., Clause 33.) Plaintiff contends that "[t]he SK Shipping bills of lading were issued to the shipper, [YL], as receipts for the cargo and to pass title to the goods to Asoma upon payment under its Sales Contract [with Macsteel], but were not the contracts of carriage for Asoma's steel cargo." (Matteo Decl. ¶ 10.) Asoma paid the freight charges for the

---

[1] Defendants Columbia and Pelagos were the manager and owner, respectively, of the vessel at relevant times.

steel coil cargo directly to the SK Shipping bank account specified in the charter party, on or about February 3, 2000. Plaintiff offers its own confirmation document, which includes notations that addressing commissions of 2.5% for MUR, 1.25% for Reliance (the ship broker) and 1.25% for Asoma were withheld from the payment. (Ex. D to Matteo Decl.) The voyage charter makes provision for the payment of "Brokerage commission" as follows: "3.75% address to Charterers plus 1.25% to Reliance Shipping Ltd." (Ex. C to Matteo Decl.)

Plaintiff asserts that, although the cargo was delivered to Defendants in good condition at the port in Taiwan, the steel coils were wet, rusty and damaged by the time the cargo arrived at the U.S. ports. (Am. Compl. ¶¶ 13, 14.)

In February 2001, well after the March 2000 completion of the voyage and delivery of the cargo, and after the alleged damage to the cargo had been discovered, MUR executed and delivered a purported assignment of its rights and nomination under the voyage charter party to Plaintiff, reading as follows:

> In consideration of freight paid hereunder, Metall und Rostoff Shipping London Ltd. hereby assigns all rights, title and interest in the charter party between Metall und Rostoff Shipping London Limited and S.K. Shipping for the M/V Faros dated December 23, 1999, to Asoma Corp.; and Metall und Rostoff hereby ratifies any litigation commenced by Asoma Corp., in United States District Court, Southern District of New York as against M/V Faros, her owners and S.K. Shipping Co., Ltd., and further stipulates and declares that its charter for the aforesaid M/V Faros was executed by and on behalf of Asoma Corp. as the beneficiary and nominee thereof and hereby nominates the aforesaid Asoma Corp. as the charterer under the aforesaid charter party ab initio and transfers all rights, privileges, and title to sue under the said charter party to Asoma Corp., nunc pro tunc.

Assignment, Ratification and Nomination, dated February 22, 2001 (Ex. J to Matteo Decl.).

Asserting that it is the consignee and owner of the cargo of steel coils, and the nominated voyage charterer, Asoma brings this action against Defendants, asserting that Defendants violated their duties to make proper delivery of Plaintiff's cargo in Defendants' capacities as common carriers by water for hire. (Am. Compl. ¶¶ 16, 17.)

DISCUSSION

*Motion to Dismiss Claim Against Defendant SK Shipping*

In the Second Circuit, a motion to dismiss a complaint based on a forum selection clause does not arise under any specific Rule 12 procedural mechanism. Rather, such a motion is treated as addressing a more general jurisdictional issue. New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG, 121 F.3d 24, 28 (2d Cir. 1997) ("our early cases characterized the mechanism by which a party sought enforcement of a forum selection clause as a 'motion to decline jurisdiction.'") At this initial stage of the litigation, the party seeking to establish the propriety of the Court's exercise of jurisdiction -- here, Plaintiff Asoma -- "need only make a prima facie showing by alleging facts which, if true, would support the court's exercise of jurisdiction." Id. at 29. In considering whether Plaintiff has met this initial burden, the facts are to be construed in the light most favorable to Plaintiff. Id. No adverse inferences can be drawn against Plaintiff absent an evidentiary hearing, and such a hearing must be held if material facts are in genuine dispute. Id. at 30.

Plaintiff maintains that the relevant contract of carriage is the voyage charter party, and that Plaintiff may claim rights thereunder on the bases of having been designated as MUR's nominee and given an assignment of MUR's rights in 2001, and/or having been MUR's principal

or nominee in the voyage charter transaction ab initio. Plaintiff asserts that the February 2001 document merely confirmed an earlier nomination, and points to Asoma's payment of the freight charges for the cargo directly to SK as evidence of its status as a charterer. Plaintiff proffers no evidence of an agency relationship other than the conclusory assertions of Mr. Matteo [and Mr. Cowles] to that effect. Defendants dispute Plaintiff's characterizations of its involvement in the voyage charter party and assert that the relevant contract of carriage is the bill of lading.

> It has long been recognized that:
>
> As between the original parties to it a bill of lading never affects the terms of the charter party . . . . The usual practice is for the master, or agent of the shipowner, to give bills of lading for the cargo, although it may be shipped under a charter party. <u>When the charterer himself ships the goods these bills of lading operate as receipts for them</u>, and also as documents of title which he can negotiate, and thereby constructively transfer possession of the goods. But they do not, as between the shipowner and the charterer, operate as new contracts, or as modifying the contract in the charter party. Where [,however,] the bill of lading has been transferred for value to third persons who are strangers to the charter party, its terms become very important. It then constitutes an undertaking on the part of the shipowner with the holders, which is independent of the charter party, except so far as that is expressly incorporated in it . . . . It constitutes the contract between the parties where there is no charter party, but where there is a charter party it never supersedes any unequivocal provisions therein . . . . The rule is that where there is a charter party the bill of lading operates as the receipt for the goods, but not as varying the contract between the charterer and the shipowner.

The Fri, 154 F. 333, 336-37 (2d Cir. 1907) (internal quotation marks and citations omitted; emphasis supplied); see also Associated Metals & Minerals Corp. v. S/S Jasmine, 983 F.2d 410, 413 (2d Cir. 1993) ("In private carriage, *i.e.,* a voyage or time charter, the bill of lading is often issued to the charterer-shipper . . . . [S]o long as it remains in the [charterer-shipper's] hands, [the bill of lading] usually is a mere receipt as between the parties to the charter and does not perform the additional function of a contract for the carriage of goods" (internal quotation marks and

citations omitted).); In re Marine Sulphur Queen, 460 F.2d 89, 103 (2d Cir. 1972) ("A bill of lading may serve three functions: as a receipt, as a document of title, and as a contract for the carriage of goods; however, it does not perform this third function for the shipper and the carrier where there is a charter party containing the terms of the carriage contract."); Continental Ins. Co. v. "M/V Ocean Jade", 269 F. Supp. 2d 348, 351 (S.D.N.Y. 2003) ("A bill of lading covering goods shipped aboard a vessel pursuant to a charterparty acts not as the contract of carriage, but as a mere receipt for the goods, so long as it remains in the hands of the charterer.").

    The foregoing rule simply gives primacy to the terms specifically negotiated for carriage of the goods between the shipowner and a charterer who is also the shipper of the goods; the negotiated terms will not be considered overriden by standard non-negotiated terms governing carriage generally, as set forth in the shipowner's bill of lading. A corollary of this rule is that shippers or bill of lading holders who are not parties to the charter party do not enjoy rights under the charter party; the bill of lading governs the conditions of carriage of their goods, and a bill of lading that is merely a receipt in the hands of a shipper/charterer becomes a contract of carriage once it is transferred to one who is not a party to the charter party. See Macsteel Int'l USA Corp. v. M/V Jag Rani, No. 02 Civ. 7436(JGK), 2003 WL 22241785, at *1 (S.D.N.Y. Sept. 30, 2003) ("when a bill of lading is issued to a third-party consignee that is not a signatory to the underlying charter party, the bill of lading constitutes the contract of carriage"); Continental Ins., 269 F.Supp.2d at 351 ("when the bill of lading has been negotiated to a third-party consignee, even where there is an underlying charterparty agreement, the bill, and not the charterparty, consitutes the contract of carriage governing relations between the shipowner and the bill's holder."). Indeed, the Fifth Circuit has observed that "[a] bill of lading's character changes when it is negotiated."

Cargill Ferrous Int'l v. Sea Phoenix MV, 325 F.3d 695,702 (5th Cir. 2003). Asoma has not, however, proferred, nor has the Court's own research disclosed, any authority for the proposition that a charterer can, by acquiring a negotiable bill of lading from a stranger to a charter party, convert a bill of lading that is a contract of carriage into a mere receipt.

On the basis of its argument that it had charterer status under the voyage charter party between SK Shipping and MUR, whether as a nominee or as MUR's principal or assignee, Asoma asserts that the voyage charter's terms, including the Southern District of New York forum selection clause, supersede those of the bills of lading with respect to the steel it bought from Macsteel and to which it took title upon receipt of the bills of lading. However, even construing the facts in the light most favorable to Plaintiff and crediting for purposes of the instant analysis the notion that a reasonable finder of fact could conclude, on the basis of Asoma's factual proffers, that Asoma was a charterer at all relevant times, Asoma's attempt to demonstrate that it is entitled to proceed under that agreement fails because Asoma's evidence is insufficient to make out a prima facie case that either Asoma itself or MUR, its purported assignee, was the shipper of the goods in question.

Indeed, the declaration of Plaintiff Asoma's own Senior Vice-President acknowledges unequivocally that YL, not Asoma nor MUR nor even Macsteel, was the shipper of the cargo. (Matteo Decl. ¶ 10.) The documentary evidence proffered by Plaintiff is entirely consistent with Matteo's conclusion: the bills of lading denominate YL as the shipper, and Macsteel also consulted YL and referred to YL as the shipper in determining whether to accept SK Shipping's nomination of the M/V Faros. Asoma, by contrast, took title to the cargo via negotiation of the bills of lading that had been issued to YL, a stranger to the charter party, and

paid the freight charges that were, under the bills of lading, payable at "destination." (See Ex. 5 to Aff. of Peter J. Gutowski in Support of Mot. to Dismiss)

On these facts, no reasonable fact finder could conclude that Asoma was both voyage charterer and shipper with respect to the goods it ultimately came to own. The shipping contract was concluded between YL and SK Shipping; because YL was a stranger to the charter party, the bills of lading constituted the contract of carriage for the steel coils. Nor does Plaintiff even contend that its affiliate Macsteel, from which it purchased the steel coils, was a party to the charter party. Thus, Asoma could not have acceded to charter party rights created by any shipping arrangement between YL and/or Macsteel and SK Shipping, for those parties' status precluded such rights from arising. MUR never appears as a shipper or even owner of the cargo that was allegedly damaged, either in the documentation presented or in Plaintiff's after-the-fact factual proffers.

MUR's purported assignment to Asoma of its rights with respect to the charter party and the instant cargo damage claim is therefore ineffective to vest in Asoma any special rights to claim the charter party as defining the conditions of carriage of the cargo of steel coils. The bills of lading, issued to a third party shipper rather than to a party to the voyage charter, constituted an independent undertaking of the carrier with respect to the goods and defined, as a matter of law, the conditions of carriage of those goods.

The Court has considered carefully all of Plaintiff's other contentions and finds them to be without merit.

In light of the Korean forum selection clause in the bills of lading, Asoma's Amended Complaint must be dismissed as against SK, without prejudice to litigation in South

Korea.

*Motion to Dismiss Claims Against Defendants Columbia and Pelagos*

Columbia and Pelagos adopt SK Shipping's arguments regarding the availability to Plaintiff of the terms of the voyage charter party in connection with the pursuit of its cargo damage claim in the instant forum. For the reasons stated above, and for the further reason that neither Columbia nor Pelagos is a party to the voyage charter, the Amended Complaint must also be dismissed as against those entities. See The Banes, 221 F. 416, 418 (2d Cir. 1915) (subcharter does not constitute any contractual relation between subcharterers and ship owners). Rather, any claims against them, as carriers, are governed by the bills of lading, which designate the Korean forum for "[a]ny claim, dispute, suit or action concerning goods carried under this Bill of Lading, whether based upon breach of contract, tort, or otherwise." (Ex. 6 to Gutowski Aff., Clause 33.)

## CONCLUSION

For the foregoing reasons, the motions of Defendants SK Shipping, Columbia, and Pelagos to dismiss the Amended Complaint are granted. The Clerk of Court is respectfully requested to close this case.

IT IS SO ORDERED.

Dated: New York, New York
September 21, 2005

_____
LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE